UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 1: 04 CV 689 |
| | : | Criminal No. 1: 02-CR-22 |
| Plaintiff, | : | |
| | : | |
| v. | : | Chief U.S. District Judge Beckwith |
| | : | |
| SAMUEL A. ASHLEY, JR., | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' RESPONSE TO §2255 PETITION**

Comes now the United States of America, and hereby respectfully submits is response to the Motion filed by Samuel A. Ashley, Jr. made pursuant to 28 U.S.C. §2255.

Ashley has raised several issues that are all trying to be categorized as ineffective assistance of counsel. These issues include claims that Ashley's trial counsel was deficient in his performance because he: 1) failed to gain Ashley a more favorable plea agreement[1] than the one that Ashley ultimately accepted in open court; 2) failed to have Ashley examined by a psychiatrist even though the Court had issued an Order allowing such an examination; 3) failed to file "for discovery" (concerning the amount of loss); 4) failed to utilize the services of a Certified Public Accountant (CPA) to again determine the amount of the loss; 5) failed to "protect the Defendant"; and, 6) committed cumulative errors in his representation of Ashley.

---

[1]Ashley has called this a "conflict of interest" in an apparent attempt to use the case law that deals with such conflicts as rising to a 6th Amendment Constitutional issue but such a characterization is patently frivolous in this case.

Ashley also claims that his sentence was "illegal" mainly due to a misinterpretation of the recently issued "*Blakely*"[2] decision and he also makes the frivolous claim that this Court lacked subject matter jurisdiction.

This Motion is frivolous. Most of the issues Ashley attempts to raise in this petition are issues that have been waived by his failure to raise them in his direct appeal and are merely being resurrected as "ineffective assistance of counsel" issues. Furthermore, Ashley pled guilty and was fully aware of the possible sentence and the amount of loss and his attempts to revisit those issues are without merit. Finally, Ashley's reliance on *Blakely* is misplaced and he does not accurately state the law of this Circuit. Therefore, the United States urges this Honorable Court to dismiss, with prejudice, this §2255 petition.

## Statement of the Case-Procedural History

On March 20, 2002, the defendant was named in a one count indictment charging him with unauthorized use of a social security number in violation of 42 U.S.C. § 408(a)(7)(B). (R. 14: Indictment).

On July 26, 2002, the defendant was charged in a superceding three-count Information. Counts one and two charged him with mail fraud, in violation of 18 U.S.C. § 1341. Count three charged him with tax evasion, in violation of 26 U.S.C. § 7201. (R. 23: Information). On July 30, 2002, the defendant, pursuant to the terms of a written plea agreement, pled guilty to counts one, two and three of the Information. (R. 24: Plea Agreement).

On December 17, 2002, the final pre-sentence report was filed with the Court. (R. 41: PSR ). On January 30, 2003, defendant filed a motion to withdraw his guilty plea. On

---

[2]*Blakely v. Washington* _____U.S._____, 124 S.Ct. 2531, 159L.Ed.2d 403 (2004).

February 13, 2003, following an extensive hearing, the defendant's motion to withdraw his guilty plea was denied and arguments were presented by the parties on objections to the pre-sentence report. (R. 50: Motions Tr.).

At the defendant's sentencing hearing on March 26, 2003, the district court denied all of Mr. Ashley's objections and made specific findings as to each objection and the reason for the court's ruling. (R. 81: Sentencing Tr. at 9-19). The defendant was sentenced to: (1) a term of incarceration of sixty (60) months on count 1, sixty (60) months on count three and fifteen (15) months on count two, each sentence to be served consecutively; (2) a three-year period of supervised release; (3) restitution in the amount of $44,418.42; and (4) a special assessment of $300.00. (R. 57: Judgment and Commitment Order).

The Defendant duly filed a direct appeal of the sentence (Case No. 03-3502). He was represented by Kevin Schad, rather than his trial court counsel, Norman Aubin, in this appeal which raised three errors:

    I. The District Court violated the terms of the Plea Agreement

    II. There was insufficient evidence presented to support an enhancement based upon 50 or more victims

    III. The Court erred in shifting the burden of proof at sentencing.

The third assignment of error discussed the 16 point enhancement Ashley received by virtue of the Court finding that the amount of loss attributable to Ashley's actions was over one million dollars. Ashley claimed, in this section of his brief, that the Court shifted the burden to him to disprove the million dollar figure and this shift was unconstitutional.

The Court of the Appeals rejected Ashley's direct appeal. In its unpublished decision, the 6th Circuit Panel stated as follows:

3

Ashley acknowledged that the sentencing decision rested with the district court alone, but he agreed that "[t]he amount of loss for purposes of [USSG] § 2B1.1 is over One Million Dollars".

After his direct appeal was denied, Ashley attempted to file a petition for rehearing *en banc* but it was denied as untimely. Ashley then filed a motion to have his appellate counsel, Keven Schad, reappointed to prosecute a rehearing based on the *Blakely* decision.

On or about October 5th, 2004, Ashley filed his current §2255 motion. A week later, he filed a "Motion for the District Court Judge to voluntarily withdraw as Judge"(R. 104: Motion) which Judge Dlott granted several days later (R. 105: Order) . This case has recently been assigned to Chief Judge Sandra Beckwith.

**Factual Background**

From 1996 until February 2002, the defendant, using the fictitious name Steve A. Adkins, operated the Ohio Community Emergency Food Center (OCEFC) to solicit donations from the public for the purported purpose of buying food for the needy. (R. 41: PSR ¶ 20.) The defendant collected the money through direct mail solicitations, telemarketing solicitations and individuals who solicited at shopping malls. The defendant used the name Adkins because he knew he was a fugitive. A federal probation violator's warrant had been issued for Ashley by the United States District Court in Dayton, Ohio on February 4, 1987. (R. 41: PSR ¶ 18.)

The defendant founded OCEFC in June 1991. (R. 41: PSR ¶ 20.) The defendant was President of OCEFC and his wife and co-defendant, Tina Swain, later became Vice-President and Chief Financial Officer. (R. 41: PSR ¶ 22). Swain first became involved with OCEFC in 1994 as a telemarketer.

Investigation by the I.R.S. determined that the defendant did not file any individual tax returns under the name of Steve A. Adkins or social security number ▮▮▮▮▮▮▮▮▮. The Social Security Administration found that number ▮▮▮▮▮▮▮▮▮ was invalid, having never been issued. (R. 41: PSR ¶ 24.)

An analysis of the monies deposited to OCEFC's bank accounts for the years 1995 though 2000 showed a total deposit of $2,224,970.14. (R. 41: PSR ¶ 27). Of that amount, $1,065,219.62 was traced to either the defendant's account or that of his spouse. The lower figure was used in guideline calculations by the probation officer. (R. 41: PSR ¶ 30.)

In early September 2001, investigating agents went to OCEFC headquarters to serve the defendant with a Grand Jury subpoena calling for all of the records of OCEFC including any lists of donors and amounts donated. While agents were serving the subpoena, the defendant slipped out the back door. Instead of complying with the Grand Jury subpoena, most of the records of OCEFC donors were burned by the defendant. (R. 41: PSR ¶ 29). The defendant, using the alias Michael Holz, remained a fugitive until February 7, 2002, at which time he was arrested in San Diego, California. (R. 41: PSR ¶ 45.)

Almost none of the monies collected went toward purchasing food for the needy. Further, most of the food in OCEFC's warehouse was donated. (R. 41: PSR ¶ 29). A portion of the money collected went toward paying staff but the rest was used by the defendant for his own personal use such as gambling and vacation trips. (R. 41: PSR ¶ 29).

In addition, the defendant did not report any of the OCEFC monies he converted to his own use as income and did not pay taxes on any of this income. (R. 41: PSR ¶ 40). For calendar years 1996 through 2001, the defendant had a total taxable unreported income of $691.528.74 with a total tax due and owing of $208,783.04. (R. 41: PSR ¶ 38).

The defendant had been previously convicted in U.S. District Court in Dayton, Ohio for conspiracy to possess counterfeit money on May 3, 1984. He was sentenced to three years confinement with all but the first six months suspended and a $1,500 fine. The defendant was released from confinement on October 5, 1984 and placed on probation for the remainder of his sentence. (R. 41: PSR ¶ 41).

On February 4, 1987, a warrant was issued for the defendant's arrest for violating the terms of his probation in that he had been charged with passing bad checks, changing his place of residence without notifying the probation office, failing to report to the probation office and failing to pay his fine. (R. 41: PSR ¶ 44).

In order to attempt to get around his past and to avoid the open federal warrant, the defendant assumed the fictitious name of Steve A. Adkins. The defendant continued to use that alias until he assumed the alias Michael Holz in 2001. (R. 41: PSR ¶ 41).

## Argument

Ashley plead guilty and knew the terms of the plea agreement, the contents of the Pre-Sentence Investigation Report (PSR) and the possible maximum sentence he was facing. This fact alone dooms most of his claims and his legal arguments concerning the sentence and the Court's jurisdiction are both without merit.

### Legal Standards -28 U.S.C. §2255 Collateral Attacks Upon Sentence

A §2255 collateral attack upon one's sentence is normally confined to raising issues that are constitutional or jurisdictional in nature. *Stone v. Powell* 428 U.S. 465, 477, n.10 (1976), *U.S. v. Timmreck,* 441 U.S. 780, 783-4 (1979). Non jurisdictional claims raised in such a motion must assert and demonstrate a "fundamental defect which inherently results in a complete

miscarriage of justice" or "an omission" inconsistent with the rudimentary demands of fair procedure". *Hill v. U.S.*, 368 U.S. 424, 428 (1962). Further, to obtain relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady* 465 U.S. 152, 166 (1982).

While claims of ineffective assistance of counsel are normally best raised in a Rule 2255 collateral attack upon the sentence, this is not true when the facts that give rise to the charge are obvious and well known at the time of a direct appeal. *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990). It is a current rage among *pro se* prison litigants to claim that every possible error, waived or ignored during trial and the direct appeal, constitutes ineffective assistance of counsel. By making such an allegation, the litigant claims a 6th Amendment Constitutional Issue necessary to bring the claims within the coverage of 28 U.S.C. § 2255 and at the same time, the litigant attempts to avoid waiver and issue preclusion by claiming the matters were neglected by counsel. Once again, Ashley's own admissions and knowledge ultimately dooms his rather transparent attempts to resuscitate issues he has already litigated or waived.

## Legal Standards for Ineffective Assistance of Counsel

To establish that his trial counsel was ineffective so as to raise a Sixth Amendment charge that his rights were violated, the petitioner must show not only that counsel's performance was deficient, but also that the alleged deficient performance so prejudiced the defense as to render the trial unfair and the result unreliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In other words, Ashley must establish "that, but for counsel's unprofessional errors, the results of the proceedings would have been different". *Id* at 694. *Strickland* requires consideration of the totality of the evidence to determine if counsel's performance was

prejudicial but the Supreme Court has cautioned that judicial scrutiny of counsel's performance must be highly deferential. *Id* at 690.

The two-pronged test set forth in *Strickland* also applies to plea agreement situations. *Hill v. Lockhart*, 474 U.S. 52 (1985). Under the *Hill* standard for the second part of the *Strickland* test, the petitioner must prove that but for the ineffective assistance of counsel he would not have plead guilty but would have insisted on going to trial. *Hill* at 59.

In *Hill,* the justification for applying the high standards of *Strickland* was the fundamental interest of the Courts in the finality of guilty pleas. *Hill* at 58. Allowing the petitioner to attempt to withdraw his plea of guilty by claiming he was induced to plea only because of his counsel's malfeasance and begin the process over again, or to have additional hearings, is the very series of events that the Supreme Court was trying to avoid in establishing the second criterion of the *Strickland* analysis. *See also: Baker v. United States*, 781 F.2d 85 (6th Cir. 1986); *cert. denied* 479 U.S. 1017 (1986).

### The Plea Agreement

As noted above, Ashley has to prove that he would not have pled guilty but for his counsel's alleged ineffective assistance. However, a review of the plea hearing, the sentencing hearing and the issues raised on direct appeal[3] establish several uncontradicted facts:
1) that Ashley was fully aware of the nature of the plea and that sentencing was at the discretion of the Court;  2) that the loss figure was set at over one million dollars; and, 3) Ashley admitted to the truth of the facts contained in the plea agreement including the amount of the loss.

---

[3]The first assignment of error in the direct appeal was a claim that the District Court violated the terms of the plea agreement. In that assignment of error, SAUSA Gary Claytor set forth the relevant facts including that there was sufficient evidence to both establish the guilt of Ashley and to support the Court's finding that there was more than a million dollars in loss (a fact that the Court of Appeals noted in its unpublished decision).

Ashley has complained that he wanted to plea to an alleged earlier agreement that would have netted him only a seven year sentence. Yet, he freely pled to the agreement that actually existed: the one that resulted in his current sentence. For him to prevail he has to show that he would have insisted on trial and received a better result. Such a claim is not supported by the record. Judge Dlott ultimately gave Ashley a three point reduction in the offense level for acceptance of responsibility: a reduction that would not have been awarded had he gone to trial.

Further, the facts concerning his guilt and the amount of loss have been established by the record and that these facts were read in open court and accepted by Ashley as noted by the 6th Circuit. It appears that Ashley's argument is not that he is guilty but only that his attorney allowed him to plead guilty to more of a loss than he claims he was responsible for causing. However, once again, there is nothing in the record to establish that the trial court would not have found a loss below the threshold one million dollars. The amount came from an investigation conducted by government agents based on moneys traced to the relevant bank accounts of Ashley and his co-defendant (R. 41: PSR ¶ 30) rather than the figures Ashley provided to the government (80% personal use of the donations by Ashley) (*Id*).

The rest of Ashley's arguments on this issue (including the claim that Aubin had a "conflict of interest" or that Aubin lied) is without merit. Ashley's claim that there was a better agreement available is not established in the record and, once again, irrelevant given that Ashley freely accepted the terms of the real plea agreement.

Numerous times, Courts in this, and other Circuits, have evaluated attempts to claim ineffective assistance of counsel in order for prisoners to escape sentences that resulted from plea agreements. In *United States v. Johnson*, 979 F.2d 396, 398 (6th Cir. 1992), the Court of Appeals

noted that a plea agreement consists only of the terms disclosed in open court. In *Ramos v. Rogers* 170 F.3rd 560, 565 (6th Cir. 1999) the Sixth Circuit dealt with a state prisoner's claim that his plea agreement was breached due to an "off the record" promise that he would get shock probation and he claimed his counsel was ineffective when, instead, he received a prison term. The Court noted that the trial judge had conducted a thorough colloquy with the prisoner and such action cured any erroneous advice that may have been imparted by counsel (citing *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2nd Cir. 1992)).

The *Ramos* Court went on to note that a proper allocution informing the defendant of actual sentencing options prevented a claim of ineffective assistance of counsel under *Strickland Id.* at 565. In closing, the Court stated:

> Thus, defendant's claim of ineffective assistance of counsel predicated upon allegedly misleading information given by counsel about the terms of a plea agreement can *never* constitute an "extraordinary circumstance" under *Baker*[4] when the court conducts a proper, clear, and thorough plea colloquy.

*Id.*

A review of the transcript concerning the plea agreement (R. 24: Plea Agreement) clearly indicates that Judge Dlott did conduct a clear, thorough and proper plea colloquy and it is equally obvious that Ashely was informed of the possible sentence and the amount of loss attributed to him. He was informed that he could receive the maximum sentence on each count and they could be set to run consecutively (R. 24: Plea Agreement @ p. 10). Ashley also admitted that he knew that the sentence could not be determined until after the PSR was completed (*Id*. @ p. 13).    SAUSA Claytor indicated that the amount of loss was over one

---

[4] 781 F.2d 85 (6th Cir. 1986); *cert. denied* 479 U.S. 1017 (1986)

million (*Id.* @ p.16). Claytor also stated that the agreement specified that Ashley could not withdraw his plea even if the guideline sentence was higher than anticipated or if the Court were to depart upward (*Id*. @ p. 17). Finally, Claytor stated that while the government was to file for a 3 point reduction in the offense level, such a reduction was at the discretion of the Court (*Id.*). After hearing all of those conditions, Ashley agreed to said terms (*Id.* @ p. 19). Later, Special Agent Voorhees testified, under oath, as to the facts including a loss of over one million dollars (*Id*. @ pp. 21-22). Finally, when questioned by the Court as to the facts supplied by SA Voorhees, Ashley stated that he was accepting as true the facts as stated (*Id*. @ p. 22).

Based on the above, Ashley is precluded in complaining ineffective assistance of counsel concerning anything to do with his plea.

In closing, the United States notes that the "existence" of this previous plea agreement was not mentioned by Ashley at his plea nor was it raised or even mentioned in his direct appeal even though all of these "facts" were patently obvious to Ashley at all times relevant to the prosecution of his direct appeal.

**Psychiatric Evaluation**

Once again, Ashley's plea wipes away this charge: a charge that his counsel was deficient for not having him examined by a psychiatrist to establish a gambling addiction (even though this addiction was noted in the PSR). The cases he cites, as well as being non controlling, deal with far different sets of facts. For example, *Loyd v. Whitley* 977 F.2d 149 (5th Cir. 1992) involved federal habeas review of a state conviction for capital murder in which the defendant was first found mentally not competent to stand trial. Four months later, he was deemed competent and ultimately convicted and after one vacation of a death sentence, a jury

again imposed capital punishment that was affirmed on appeal. However, in state based petitions for relief, a state court determined that the performance of the Defendant's counsel fell below the standard and the three defense attorneys admitted that they were "unsatisfied" of their representation of the Defendant. The court noted that the sanity of the defendant was a key issue at trial and the failure to conduct the examination was crucial in the finding of guilty and the imposition of the death penalty. In other words, testimony of a psychiatrist to the jury may have well lead to a life sentence rather than the death penalty.

The same is true in the case of *Loyd v. Smith*, 899 F.2d 1416 (5th Cir. 1990) which involved a federal review of a state death sentence and a psychological profile was an important factor concerning the imposition of the death penalty. The issue was not the guilt of the defendant but whether his alleged insanity would cause a jury to spare his life.

Ashley states that:

There is little doubt that had the defendant been evaluated, the outcome of his sentencing would have been different. The court would have a professional opinion in order to review, and not just the statements of defense counsel.

( R. 103: Petition @ p. 10).

This is both speculative and an incorrect recitation of fact given in that in page 9 of his petition, Ashley notes that both SAUSA Claytor and SA Vorhees stated to the Court (along with Aubin) and noted his gambling addictions. Ashley has provided no authority that if he had been examined the Court somehow would have reduced his sentence based on the speculation that the examiner would have concluded Ashley had the addiction to gambling that both the prosecutor and relevant case agent had told the Court existed.

The United States notes that there is little, if any, case authority that has accepted gambling as establishing "diminished capacity" so as to garner a reduction in sentence. *See*

*United States v. Tarter* 125 F.3d 856, 1997 WL 603424 (6th Cir. 1997), where such a gambling addiction did not result in a reduction based on diminished capacity. Additionally, Ashley has supplied absolutely no authority even suggesting that such an alleged addiction has been recognized as a factor suggesting a downward departure is merited.

### Failure to File for "Discovery"/Utilize a CPA

This is nothing more than an attempt by Ashley to re-litigate the amount of loss that has already been dealt with by the Court of Appeals. The 6th Circuit already stated in its unpublished decision that Ashley admitted to at least a million dollars of loss and as noted above, this came from the investigation of the government agents, not the admissions of Ashley. All of Ashley's claims that he wasn't responsible for the million dollar loss are neither supported by facts and are not relevant given his plea and admissions. The amount of loss was raised in the direct appeal and dealt with and trying to revive it as ineffective assistance of counsel is improper.

Furthermore, the plea agreement involved an information that was filed thus removing the original indictment in the case. Without the existence of the indictment, there was NO pending Court case and no Court number to go along with it. Ashley ignores that his attorney could not file a motion for discovery under those circumstances.

### Illegal Sentence

Ashley's lengthy dispute over his sentence is based on his misunderstanding of a recent United States Supreme Court decision *Blakely v. Washington* 124 S.Ct. 2531 (2004). Ashley claims that the *Blakely* decision strikes down the United States Sentencing Guidelines where a jury does not make findings of facts used to compute or enhance the final sentence.

This argument is wanting on two grounds. The first is that by accepting a plea agreement on an information, Ashley knowingly waived both his right for a grand jury to weigh the facts

13

and decide to indict him and he has waived his right for a petit jury to evaluate the facts surrounding his guilt or innocence. The logical outcome of his argument is that even after a plea, a jury would have to be convened to evaluate facts raised in the PSR that did not come from the defendant's own admission if those facts enhanced the offense level computed by the Court (and thus increased the sentence).

More importantly, in this Circuit, the USSG's are still valid and the *en banc* decision of *United States v. Koch*, 383 F.3d 436 (2004) held that *Blakely* did not invalidate the Guidelines. Thus, Ashley's reliance on *Blakely* and the fact that other circuits may have ruled differently is misplaced and not controlling.

### The Court has Subject Matter Jurisdiction

Ashley's next attempt to attack his sentence is a confusing ramble through tax protestor nonsense that 26 U.S.C § 7201 does not create subject matter jurisdiction for this Court because Ashley claims a lack of an "implementing regulation" to accompany the relevant code section. Though he cites numerous cases, he provides no authority that actually supports his contention that prosecution under the relevant statute is jurisdictionally unsound.

Several courts have examined this claim and found it patently frivolous. In *United States v. Ross* 52 F.3d 329, 1995 WL 2189539 ( 7th Cir. 1995)[unpublished], the Court of Appeals stated as follows:

> Ross contends that the district court was without subject matter jurisdiction because there were no regulations issued to implement the criminal statute under which he we convicted......Ross reasons that the court does not have authority to prosecute him because 26 U.S.C. § 7201 does not appear in the parallel table of authorities in the Code of Federal Regulations. These claims are equally frivolous. Section 3231 of Title 18 of the United States Code vests in the district courts original jurisdiction over all offenses against the laws of the United States including tax offenses enumerated in sections 7201 through 7210 of Title 26. *United States v, Koliboski*, 732 F.2d 1328, 1329 (1984) [7th Cir.].

*See also: United States v. Hicks*, 947 F.2d 1356, 1360 (9th Cir. 1991)("it is the tax code itself, without references to regulations, that imposes the duty to file a tax return"); *United States v. Bowers,* 920 F.2d 220, 222 (4th Cir. 1990)("duty to pay those taxes is manifest on the face of the statutes, without any resort to IRS rules, forms, or regulations"); *U.S. v. Washington*, 947 F. Supp. 87, 91 (S.D.N.Y. 1996).

Thus, Ashley's claim that this Honorable Court is without subject matter jurisdiction is not only frivolous and unsupported by the law, it is also advanced in bad faith.

### Miscellaneous Complaints/Cumulative "Facts"

Ashley merely recites numerous cases without reference to the underlying facts of the cases . The vast majority of his complaints involve his acceptance of a plea and his acceptance destroys the claim of ineffective assistance. Ashley has failed to prove either step of the *Strickland* test and most importantly, he has failed to meet the second prong of the *Hill* test: that being that but for his attorney's allegedly deficient counsel, he would not have pled guilty but proceeded to trial-a trial on crimes he had admitted he was guilty of and his only dispute was over the amount of loss.

Furthermore, cumulative error is not a proper basis for gaining habeas relief in non capital sentence cases. *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)

        Respectfully submitted,

        GREGORY G. LOCKHART
        United States Attorney

        s/James M. Coombe
        JAMES M. COOMBE (0025538)
        Assistant United States Attorney
        221 East Fourth Street, Suite 400
        Cincinnati, Ohio 45202
        (513) 684-3711

## CERTIFICATE OF SERVICE

  I hereby certify that a copy of the foregoing *United States' Response to §2255 Petition* was served this 4th day of November, 2004, by regular U.S. Mail, upon Mr. Samuel A. Ashley, Jr., #40656061, Federal Correctional Institution, P.O. Box 6001, Ashland, Kentucky 41105.

                s/James M. Coombe
                JAMES M. COOMBE (0025538)
                Assistant United States Attorney

*N:\_ECF Workload\JCoombe\Ashley, Samuel A\2255 Response.wpd*