UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

2004 NOV 22  PM 2:31

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 1-02-CR-022 |
| | ) | Case No.    1-04-CV-689 |
| V. | ) | |
| | ) | $CR-1-02-22$ |
| | ) | Chief District Judge Beckwith |
| **SAMUEL A. ASHLEY JR.** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S
REPLY TO THE §2255 MOTION THAT THE
DEFENDANT FILED**

Now comes the defendant, Sam Ashley, pro-se, who respectfully
submits his response to the government's reply.

First, the defendant will address the government's total mis-
conception and false statements about Food Banks. The government
claims:

See, **Government's Reply Page 5,**

> "Almost none of the monies collected went toward
> purchasing food for the needy. Further, most of
> the food in OCEFC's warehouse was donated".

That statement by the government shows just how uninformed,
mislead, and the total misconception they have about food
banks.

Once again the government is trying to hold the defendant and the
Emergency Food Center to an impossible and unreal standard. Food
Banks do not purchase food. Take a look at another Food Bank in
Cincinnati, "The Free Store Food Bank", they raise millions of
dollars each year and do not spend one single penny on food.

(2)

Also, look at the national charity "Feed The Children", again
they raise tens of millions of dollars and do not spend any
money on food.

The Asst. US Attorney would have everyone believe that the amount
of money that a food bank actually spends on food is somehow
relevant to the honesty of the charity. The defendant submits to
this court, that this statement by the government is false.
The Asst. US Attorney is just taking blind jabs at the defend-
ant.

A Food Bank is just that, "A Bank Of Food", instead of buying
food, Food Banks receive food donations from a wide variety of
sources. The expense comes from the shipping, handling, and
storage of the food.

An example of this is when a national chicken company donated
eight (8), semi-trailers full of frozen chickens. For each
truck, the center paid a trucking company $250 to haul each
load from Indianapolis Indiana to our warehouse in Cincinnati.
The Emergency Food Center had to unload the truck, rent 3
refrigerated trucks at $350 per week for each truck, run the
refrigeration unit on each truck, that used 1 gallon of diesel
fuel per hour, per truck. That is where the expense is concern-
ing a Food Bank. Those chickens cost the Emergency Food Center
about $6,000, we did not buy the food directly, the cost is
indirectly spent of everything that is donated.

The Asst. US Attorney fails to mention any of the true facts
about the Emergency Food Center, he would rather have this court
believe something that he knows is not true, or if he does not
know, with a little due diligence he would see.

The Emergency Food Center fed tens of thousands of needy families
in the Tri-State area, the center was the largest direct food

(3)

provider to needy families in the Tri-State area.  There are very
few charities in Cincinnati that did not benefit from the Emergency
Food Center on a regular basis.

The Asst. U.S. Attorney won't tell this court the amount spent on
payroll, lease payments, rentals, fuel, insurance, office supplies,
legal fees, accounting fees, filing fees, phone bills, gas bills,
and the numerous other day to day operating costs the center
incurred.

The reason the Asst. U.S. Attorney does not reply with any dollar
amounts for anything is because if he were to produce all those
records, then this court would see that the defendant could not
have possibly stolen 80% of all the funds the center collected.
The government is scared to even discuss the dollar figures, and
they certainly do not want the defendant to ever request and rec-
eive discovery, as that would disprove their false statements.

### FACTUAL BACKGROUND
See government's response, page 5.

The government forgets to mention that on August 20, 2001, a fed-
eral grand jury issued a subpoena for the records of the Emergency
Food Center.  This subpoena for the records gave the defendant 30
days from the time it was issued (September 20, 2001) for the doc-
uments to be produced.

In bad faith, the case agents waited 20 days before they even att-
empted to serve the subpoena, therefore giving only 10 days notice,
when in fact, the grand jury had given 30 days in which to provide
the records.

On September 10, 2001, eight federal agents from the I.R.S., F.B.I.,
and the U.S.P.S. raided the warehouse and offices of the Emergency
Food Center.  When the defendant identified himself, the agents

**(4)**

demanded to speak to the defendant and everyone else in the facility.

They began asking employees for identification.  The Emergency Food Center doesn't have a back door.  Agents allowed the defendant to simply walk out the front door and drive away.

Neither the defendant or his employees were ever told of any subpoena.  The defendant had the absolute right to not speak with any agent.

The federal agents were embarrassed by Ashley's leaving the premises. The government did not care that day about anyone's rights, and still do not care.

Page 5 of the government's response states that the defendant made $691,528.74 during 1996 thru 2001, but somehow they claim that the loss amount was over one million dollars.  If the defendant took the entire $691,528.74, then that would be the loss amount.

### LEGAL STANDARDS
### (28 U.S.C. §2255 Collateral Attacks Upon Sentence)

The defendant has more than proved that "a fundamental defect in counsel's representation of the defendant resulted in a miscarriage of justice".

The defendant did not have access to his files which contained the key pieces of evidence that his counsel was ineffective.  Therefore, the defendant could not have used it in his direct appeal.

The government makes light of pro-se litigant's rights to pursue ineffective assistance of counsel claims.

The Asst. U.S. Attorney's comments concerning a "current rage among pro-se litigants" are arrogant and offered in bad faith.

(5)

Defendants have an absolute right to effective assistance of counsel.

### LEGAL STANDARDS FOR INEFFECTIVE ASSISTANCE OF COUNSEL

The defendant has more than proved that counsel's performance was deficient, and that his errors prejudiced the defendant as to render the trial unfair and the result unreliable.  **Strickland V. Washington, 466 U.S. 668, 667 (1984).  Strickland** requires consideration of the totality of the evidence to determine if counsel's performance was prejudicial.  This is very obvious in the instant case.

In the instant case, each of the defendant's claims amount to ineffective assistance of counsel, the government hopes that this court will ignore the merits of his claims. The direct errors of the defense counsel did in fact  prejudice the defendant in many different ways.  Once the evidence is in, this court will be in a position to see just how much ineffective assistance that the defense counsel provided in this case.  Every prong of **Hill** and **Strickland** have been more than proved by the defendant.

See, **Government's Response Page 9, 2nd paragraph,**

> "Further, the facts concerning his guilt and the amount of loss have been established by the record and that these facts were read in open court and accepted by Ashley as noted by the 6th Circuit".

See, **Government's response Page 10, 4th paragraph.**

> "Judge D'lott did conduct a clear, thorough and proper plea colloquy and it is equally obvious that Ashley was informed of the possible sentence and the amount of loss was over one million dollars".

See, **Government's response Page 11, 1st paragraph.**

> "Finally, when questioned by the court as to the facts

**(6)**

supplied by SA Voorhee, Ashley stated that he was
accepting as true the facts as stated".

Is the Asst. US Attorney looking at a different set of trans-
scripts than the defendant has?  That is not what Ashley said,

See, **Motion §2255, Exhibit I (change of plea transcripts)**
**Page 22, Line 7.**

       The Court:  Mr. Ashley, let me ask you, did you hear
       what the agent just said?

       Defendant: Yes.

       The Court: Is what he said correct?

       The Defendant: For the purpose of this hearing It's
       in my best interest to accept those facts.

       Mr. Aubin: That is correct your honor, Mr. Ashley is
       admitting to those facts for the purpose of this hear-
       ing, as I said previously.  There are certain arguments
       that could be made as part of the PSI report, but they
       do not go to the actual plea of guilty today.

       The Court: All right, so what you're leaving to work out
       with the probation officer, I take it, is the amount?

       Mr. Aubin: It is the amount your honor.

The defendant has never ever admitted that the loss amount was
over one million dollars, in fact, even during sentencing when
the defendant said that he was taking responsibility for all
of the good things that the center did, and he would take the
blame for what went on.  The Judge only asked if he admitted to
the mail fraud, she never asked if he was admitting the loss
amount at over one million dollars.

The fact is that the defendant has always maintained that the
loss amount was less then a million dollars. The defense counsel,
the case agents, the Asst. US Attorney, and the Judge, all knew
that Ashley was denying the loss amount.

See, **Government's response page 11, 3rd paragraph.**

> "In closing, the United States notes that the "existence"
> of this previous plea agreement was not mentioned by Ashley
> at his plea nor was it raised or even mentioned in his
> direct appeal even though all of these "facts" were
> patently obvious to Ashley at all times relevant to the
> prosecution of his direct appeal".

The nerve of this Assistant United States Attorney, James
Coombe.  This attorney is so far off base about the facts,
he cannot offer things as fact, when they are not.

The defendant has always said in open court that these other
plea agreements existed. Mr. Coombe might want to familiarize
himself with the facts of the case before he makes false state-
ments that do nothing more then show bad faith, and he is
wasting this court's valuable time in the process.  However,
the defendant will respond to the government's nonsense.

See, **Defendant's §2255, Page 1, Exhibit A,  transcripts titled
Motions.**

**Page 5 Line 21, Defendant speaking:**

> "About a week later, the attorney brought me, Mr. Aubin
> brought me their first deal. I was going to be charged
> with one count of income tax evasion, one count of mail
> fraud. Worksheets showed about a 60 month sentence. I
> agreed, told the attorney to "get it in writing".

> Continued Page 6 Line 1, transcripts titled Motions.

> "Two weeks later, a written deal came back. They decided
> to add one count of mail fraud, making the guideline range
> seven to nine years, with the lower end recommended".

It is clear by these transcripts that the defendant has always
said that he was offered other deals.

See, **Motion §2255 page 5, Exhibit G, Sentencing transcripts,**
**Page 25 Line 15:**

> Defendant speaking:  I did enter a guilty plea based
> upon the promises from the prosecution of the seven
> year sentence.

See, **Exhibit G, Page 25, Line 15 Sentencing transcripts:**

> Defendant speaking:  Okay. there was an agreement of
> seven years. I'm sorry that they have gotten amnesia
> it came down to---you know, everybody wants me to
> accept responsibility for what I have done, and I have.

See, **Motion §2255, Page 12, Exhibit H, letter to Judge D'lott.**
The defendant even wrote the judge and said that he had been
offered these other deals.

To address the government's statement on Page 11 of the
Government's response that states that this issue should
have been brought up on a direct appeal. First, the direct
appeal was filed in November of 2003, the defendant did not
get the copies of the file that his lawyer had until June of
2004.  At that point the defendant had been called a liar by
the government, defense counsel, and the Judge, Ashley had
no proof, just his word. That all changed when he received the
paperwork that the defense attorney sent in response to a motion
to compel.  Simply put, the defendant at every turn said the
exact same thing about the other plea agreements that he was
offered and that he thought that he had plead to.  Now there
is proof positive. That should be that.

### Psychiatric Evaluation

See **Government's Reply Page 11.**

Here the government says that the defendant's plea wipes away
this charge.  Once again the words of the Asst. US Attorney
is in the favor of the defendant.  The government now claims

that regardless of what such an examination would reveal, the
court would not depart downward in the sentencing guidelines.

If there is no way that the district court could depart on
a diminished capacity claim, then why would the defense attorney
    file a motion for an examination?.  When granting the motion
Judge D'Lott (**§2255 motion Exhibit T, docket, September 13, 2002).**
granted the motion by saying:

> Notation order by Judge Susan D'Lott, granting motion
> for an order appointing a psychiatrist for the purposes
> of evaluation and mitigation.

See, **Black's Law Dictionary, (mitigation of punishment).**

> Criminal Law--A reduction in punishment due to mitigating
> circumstances that reduce the criminal's level of culpa-
> bility, such as the existence of no prior convictions.

See, **Black's Law Dictionary, (diminished capacity)**

> An impaired mental condition---short of insanity-- that
> is caused by intoxication, trauma, or disease and that
> prevents a person from having the mental state necessary
> to be held responsible for the crime.

The word mitigation in the Judge's order, is the key word.
The Asst. US Attorney would have this court believe that
Judge D'Lott erred when she granted this motion. If it would
not have benefitted the defendant, then why would the defense
counsel file the motion, and the judge grant the motion?
Even more, why did the government not object to the motion
when it was filed?.

See, **Government's response page 12, paragraph 4.**  The govern-
ment claims that the defendant does not site any case law on
this claim, then they turn around and say that there is little
if any case law on the subject.

The government is not in a position to determine what the district court judge could have, or would have done. The judge was very much aware of the purpose of having the defendant evaluated for mitigation purposes. The government should have objected to the motion that was filed by the defense and before the judge granted the motion.

The Asst. US Attorney is saying that the judge erred when granting this motion, and defense counsel was not at fault for not having the evaluation done, and that the government erred in not objecting to the motion when it was filed.

### FAILURE TO FILE FOR DISCOVERY
Government's Response Page 13

Again, the Asst. US Attorney is misguided in his rather humorous attempt to explain why the defense counsel did not file for discovery. All that Ashley wants is for the government to provide proof, not bogus mumbo jumbo half truths about the amount of loss and other issues.  At no time has any court actually made the government prove any of their allegations.

For the government to say that defense counsel was not able to file for discovery in this case is absurd. Counsel had plenty of time to file for and to receive discovery in this case, and the response from the government does not warrant a response.

The defense counsel, case agents, government, and the district court knew from the very start of this case that the defendant was denying most of the allegations that the government offered. Defense counsel's error's and failure to file for discovery directly affected the outcome of the proceedings against the defendant.

It should not be too much to simply ask the government to prove what they are saying about the defendant. The defendant never gave up his right to have discovery. "Never".

**(11)**

**Illegal Sentence**
Government's Response Page 13

Ashley's dispute over his sentence is not a misunderstanding
of the United States Supreme Court's ruling in **Blakely V Wash-
ington.**

The government again, wants this court to believe that since
the defendant pled guilty, that he somehow became eligible
to be sentenced for crimes in which he was never charged.

Ashley was charged with two counts of mail fraud and one count
of income tax evasion, but he got sentenced for other crimes
that he did not admit to, or even get charged with. Obstruction
of justice is a crime, a crime that if the government was so sure
that the defendant committed this crime, he could have been charged
with it. Instead, the government merely suggests that the
defendant committed this crime, and Ashley got sentenced for it.

That is what **Blakely** is about, a little fair play, a little
integrity when dealing with people's lives. The government gives
extra time for things that defendants were never charged with, and
they pass it out like it's candy.

How can government employees who take an oath to uphold the
United States Constitution, even begin to suggest that this
system is fair? Aren't we doing to our citizens the same things
that we condone other countries for? Overseas we call it
dictatorship, communist, unfair, an outcry for justice? But
in America we are doing the exact same thing by punishing
people for crimes they have never been charged with. Is this
what the framer's of the Constitution had in mind, to let the
government have free rein over the rights of the people? To
let this happen here in the United States Of America? I think
not.

(12)
GOVERNMENT'S RESPONSE, PAGE 14
INCORPORATED MOTION TO STRIKE

The defendant moves this Honorable Court to strike the govern-
ment's response to this portion of the defendant's pleadings
concerning Subject Matter Jurisdiction, on the following grounds:
1) F.R.C.P. Rule 12(b)(6)-fails to state a claim upon which
relief can be granted, and, 2) F.R.C.P. 12(b)(7)- the govern-
ments response is immaterial, scandalous, impertinent, frivolous,
and insulting.

The defendant asks this court to take mandatory judicial notice,
pursuant to F.R. Evidence rule 201, of the enactment of public law
105-207, Section 3707, whereby Congress lays down a hard and fast
rule that employees of the government are barred from using the
disparaging  words "tax protester" in the conduct of their duties.
Obviously the Asst. U.S. Attorney has disregarded these instructions.

Further, the defendant makes appear the decisions of the Supreme
Court and lower courts brought forward in his petition which,
by clear weight of long standing precedent, to which, the defend-
ant respectfully submits, the instant Court must bow.

The cases cited by the government are 1)-off point, and 2) unpubl-
ished and from other circuits.

The defendant would show the Court that the Supreme Court in
**California Bankers V. Schultz,**  39 L.ED.2d 812, 820, did not think
this claim "frivolous". Neither did the myriad of other courts
cited in the defendant's brief.

The government offers the **Hicks** case. This is off point since it
deals with a controversy with regard to the IRS Form 1040 and
the Paperwork Reduction Act. The defendant's thrust is distinguished
as arising from a claim that absent the implemention regulation,
criminal prosecution cannot commence.  While the defendant agrees
that the court has general subject matter jurisdiction under 18

(13)

U.S.C., by reason of the precedent court cases cited in this brief, the defendant contends that there is no jurisdiction to prosecute the charge of violating 18 U.S.C. §7201, absent an implementing regulation.

The government has offered the case of **Bowers**, it is totally off point in the same obtuse way, as in **U.S. V. Washington.**

The defendant suggests that the court should consider sanctions against the government for filing this frivolous response. F.R.C.P. Rule 11.

### MISCELLANEOUS COMPLAINTS/CUMULATIVE FACTS
#### Government's response, Page 14

See, **Walker V. Engle, 703 F.2d 959 (6th Cir. 1983)**

> "We need not determine whether each of the alleged errors would, alone, require that we find a deprivation of due process. It is clear that the cumulative effect of the conduct of the state".

In the instant case, Ashley has more then proved that not only does he prove without a doubt that each and every claim that he made was complete ineffectiveness of counsel, but that also the totality of all of the errors by counsel caused a miscarriage of justice, and deprived the defendant of his constitutional right to have effective assistance of counsel.

### ISSUES THAT THE GOVERNMENT DID NOT RESPOND TO

The defendant has taken note that many of the claims that the defendant made in his §2255, went unanswered by the government, however, it is important that this court look at the claims the government has not denied.

**(14)**

1)   The government did not respond to the claim on page 1
     of the defendant's §2255, that claim is that defense
     counsel, stood up in court and told the judge that
     the claims the defendant had just made were not true.
     Nor, did the government address this issue.

2)   The government did not address the fact that after filing
     a motion to compel counsel to provide a copy of the defend-
     ants file, did the defendant came into possession of the
     exact same paperwork that counsel had shown the defendant.
     See, **Exhibit C, (§2255), also Exhibit D (§2255),** those
     notes are in the handwriting of defense counsel, and
     proves that the defendant was telling the truth the whole
     time.

3)   The government does not mention anything at all about
     the motion defense counsel filed to withdraw as counsel.
     **Exhibit R, (§2255),** counsel's own words confirm that he
     had issues with the defendant.

4)   The government did not respond to any of the figures that
     the defendant laid out in his §2255, page 11, 12.
     If there is all of this proof on how much the defendant
     stole, they certainly do not want to discuss it. they
     also do not discuss that the defendant did have other legal
     income, or the fact that the government illegally took
     gambling winnings that his wife had won, and put that
     money down as income for the defendant. Again, silence
     from the government.

5)   The government decided not to respond to the factual claim
     that the defendant made on Page 13, of his §2255, that
     claim is that the government without permission or a search
     warrant, entered the defendant's home and removed computer

equipment, then turned around and used the data base of the center's contributors, and contacted so called victims.

6)    The government did not respond to a claim that the defendant has always made, and that is that the case agents told Ashley that none of the statements that he made during the de-briefings would be used against him, unless he pled guilty and took the stand. They also forget to mention anything about how defense counsel never protected the defendant against making statements to the agents. Further, they fail to mention how at the sentencing of the defendant he wanted to call the case agents to the stand to testify as to what exactly was said to the defendant about using his statements against him.

7)    The government fails to respond to the fact that Asst. US Attorney, Gary Claytor, denied giving any interviews to the press. The defendant submitted a copy of that article that showed that Claytor stated that the defendant would get a seven to nine year sentence, and they would not prosecute the defendant for his Dayton, probation violation. But, the article did appear and said just that.

8)    The government fails to argue the fact that the obstruction of justice "enhancement" was based upon burned material that the agents found outside the home of the defendant. They certainly do not deny that all of the records they found burned, were simply the hard copies of all of the records that were in the computers that they seized. And that every single record the grand jury had asked for, they received.

These are all claims with merit, so much in fact, that the government decided against trying to even argue them.

For all of the reasons above, the defendant respectfully requests that this Honorable Court, order that an evidentiary hearing be

(16)

held in order to solve all of the claims submitted by the
defendant.


**RESPECTFULLY SUBMITTED**

*Sa Crahly*


---

**CERTIFICATION**

---

I do hereby certify that a copy of this motion has been sent
VIA inmate Legal Mail at FCI Ashland KY to the Asst. US Attorney
James M. Coombe at 221 East Fourth St., Suite 400, Cincinnati,
OH 45202 on this 17th day of NOV  2004.

*Sam Ashley*