*Filed*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

05 MAR -2 AM 11: 01

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 1:04 CV 689 |
| Plaintiff, ) | Criminal No. 1:02-CR-22 |
| ) | |
| V. ) | Chief Judge Beckwith |
| ) | |
| SAMUEL A ASHLEY JR. ) | |
| ) | |
| Defendant. ) | |

## THE SUPREME COURT'S RULING IN
## BOOKER DOES APPLY TO THE DEFENDANT

Now comes the defendant, Sam Ashley, pro se, who hereby makes
the following argument in support of his **Apprendi and Booker**
claims, and how it directly affects the illegal sentence that
the defendant received.

In support of the defendant's claim of receiving an illegal sent-
ence the defendant states the following:

Retroactivity for non-final cases still on direct review is no
problem, as the **Booker** Court so stated in relying on **Griffith
V. Kentucky, 479 U.S. 314, 328, 93 LEd.2d 649 (1987)**, Booker,
**BREYER, J.,**Slip Opinion, Pg 25.

It is also not a problem for initial habeas corpus petitions.
See, **Schiro V. Summerlin, 542 U.S._____, 159 L.Ed.2d 442, 124
S.Ct. 2519 (2004),** provides compelling support for **Booker's**
retroactivity to initial habeas cases. Although, the **Supreme
Court** in **Summerlin** rejected retroactivity of its new procedural
rule announced in **Ring V. Arizona, 536 U.S. 584, 153 L.Ed.2d 556
(2002)** (holding a jury, not a judge, must make the findings necessary
to impose the death penalty), it did so because the possibility of
inaccuracy was minimal in that both fact finders there  were

required to use the same beyond a reasonable doubt standard. Pre-**Booker**, on the other hand, judges determined sentence-enhancement facts by preponderance of the evidence. Post-**Booker**, those facts must be both determined by a jury and proved beyond a reasonable doubt. Accordingly, pre-**Booker** the fact finding process so "seriously diminished accuracy as to produce an impermissibly large risk of injustice. **Summerlin, 159 L.Ed.2d at 451.**"

The **Booker** rule which remedied that risk is therefore exempt from the **Teague V. Lane, 489 U.S. 288, 103 L.Ed.2d 334 (1989)** retroactivity bar under the watershed rule of criminal procedure exception. See, e.g., **In re Winship, 397 U.S. 358, 25 L.Ed.2d 368 (1970) cf. Ring V. Arizona, 536 U.S. 584,** discussed in **Summerlin.**

**Booker** invalidated the Guidelines both on a Sixth Amendment jury trial violation as well as the **Apprendi V. New Jersey, 530 U.S. 466, 147 LEd.2d 435 (2000),** due process doctrine. Jointly those basis compel retroactivity, See, **Winship, United States V. Hernandez, 137 F.Supp.2d 919, 931-932 (N.D. Ohio 2001)** rev'd in **United States V. Luciano, 311 F.3d 146 (2nd Cir. 2002),** and **United States V. Murphy, 109 F.Supp. 1059, 1064 (D.Minn. 2000)** Therefore, **Summerlin's** reliance on **DeStefano V. Woods, 392 U.S. 631, 20 L.Ed.2d 1308, (1968) (per curium)** (refusing to give retroactivity effect to **Duncan V. Louisiana, 391 U.S. 145, 20 L.Ed.2d 491  1968)**(applying Sixth Amendment Jury Trial guarantee to the states), to reject retroactivity is inconsequential to **Booker's** retroactivity. In **DeStefano,** like **Summerlin,** the fact finding standard on which retroactivity was claimed was the same, only the fact finder differed. **Booker** changed those standards exactly as did **In re Winship, at 375,** (requiring juvenile charges be proved by proof beyond a reasonable doubt instead of preponderance, reasoning the reasonable doubt standard is a prime instrument for reducing the risk of convictions resting on factual error." The standard provides concrete substance for the presumption of innocence-that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our

(3)

criminal law.) Because the foundation of **Booker's** new rule of constitutional law rests on both the **Apprendi** due process doctrine and the **In re Winship** Sixth Amendment right to a jury trial with respective beyond a reasonable doubt standards, retroactivity to initial habeas petitions, such as in the instant case, should not be a problem.

Even if this Honorable Court does not believe that the **Booker** decision applies to the defendant on a first §2255, then the Court should consider that **Booker** specifically declared "both the Sixth Amendment holding and [its] remedial interpretation of the Sentencing Act [retroactive] to all cases on direct review." **Breyer J. Slip Opinion, at 25.** Instead of limiting retroactivity only to cases on direct review, like Mr. Booker's and Mr. Fanfan's, by that statement the **Supreme Court** made **Booker** retroactive to all cases.

This is so because **Booker's** Sixth Amendment new rule simply "re-affirmed its holding in **Apprendi**, that any fact, other than a prior conviction which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. Id **Stevens J. Slip OP. at 20.** That rule is but a magnification of its **In re Winship, 397 U.S. 358, 25 L.Ed.2d 368** rule "that the Constitution protects every criminal defendant against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged" **Booker, Stevens J. Slip Op at 5.**

In **Ivan V. City Of New York, 407 U.S. 203, 205, 32 LEd.2d 569, 661 662. (1972) (per curium)** the Supreme court declared **In re Winship** must be given complete retroactive effect, **Ivan** was also a direct appeal case like **Booker.** However, the Supreme Court's declaration left no doubt its retroactivity declaration meant retroactivity to all cases, final or otherwise. Proof of it is in the several habeas corpus cases in which the Supreme Court

**(4)**

subsequently applied variation of its **In re Winship** rule. See,
e.g., **Yates V. Evatt, 500 U.S. 391, 114 L.Ed.2d 432, (1991)**
(applying rule in **Sandstrom V. Montana, 442 U.S. 510, 61 L.Ed.2d
39,99 (1979)** that jury instructions on malice or intent violated
due process by relieving the state's burden of proving every
element beyond reasonable doubt as required by **Winship** principle)
See, **Jackson V. Virginia, 443 U.S. 307, 61 L.Ed.2d (1999)** (apply-
ing **Winship** rule to insufficiency of evidence standards of review
in federal habeas corpus proceedings.)

By applying the **Winship**-type rule to multiple habeas cases, the
Supreme Court has arguably also de facto applied its **Booker** consti-
tutional rule through those past cases. If **Booker and Winship** are
rules of the same type, application of one to habeas proceedings
is application of the other thus making both retroactive under
**Tyler V. Cain's** application retroactivity method. Id at 533 **U.S.
at 665, 150 L.Ed.2d at 645**. But, cf. **In re Turner, 267 F.3d 225
(3rd. Cir. 2001)** (rejecting same argument as to **Apprendi.**)

It is also argued that the Supreme Court has made its **Booker**
constitutional rule retroactive through its multiple holdings
because it held in "Case One" **Ivan V. 407 U.S. at 205, 32 L.Ed.2d
at 661-62** that the **In re Winship** type of rule applies retroactively
to cases on collateral review and held in "Case Two" **(Booker)** that
its rule is of that particular type, then it necessarily follows
that the **Booker** rule applies retroactively to cases on collateral
review. **Tyler V Cain at 668-669 (O'Connor concurring),** but, **Turner
at 225,** rejecting same argument as to **Apprendi.**

Also **Booker** has arguably made its rules retroactive through its
Guideline clarifying amendments. It is well established Guideline
clarifying amendments are retroactive. See, e.g., **United States
V. Garcia-Cruz, 40 F.3d 990 (9th Cir. 1994)** (under the law of
our circuit, amendments to the Sentencing Guidelines which are
clarifying as opposed to substantive may be given retroactive
effect. See, Also, **United States V. Stinson, 30 F.3d 121,122**

(11th Cir. 1994) (per curium) (collecting cases). **Booker** made
no substantive changes to the Guidelines. It merely  interpreted
them BREYER,J. Slip Op at 25). ("our remedial interpretation of
the Sentencing Act") advisory as "Congress would have intended"
(id Pg 2) had it known its mandatory provision violated the Sixth
Amendment right to jury trial. See, also, id., pg 22. (Hence we
have examined the statute in depth to determine Congress' likely
intent in light of today's holding)"

**Booker's** amendment accordingly merely clarified Congress' intent
in light of its Sixth Amendment holding. Had **Booker** "superimposed"
its Sixth Amendment constitutional requirement announced therein
(id pg 3) by "engrafting" the Court's constitutional requirement
onto the sentencing statutes, it would have substantively destroyed
the system. (id pg 9) Such substantive change would have produced
unintended identical punishment for different degrees of similar
crimes (id) and vise-versa (id pg 10) thus destroying Congress'
goal of sentence uniformity (id. Because the **Booker** Sentencing
Reform Act amendments did not change the guidelines substantively
but merely interpreted them as advisory instead of mandatory,
such amendment is only a clarifying amendment necessarily retro-
active.

**Booker's** additional amendment to the sentencing appellate process
also changed nothing substantively. It only clarified the standard
of review Congress would have preferred in light of its Sixth
Amendment. Retroactivity of such changes in the post conviction
process is not a problem. See, **Collins V. Youngblood, 497 U.S. 37
111 L.Ed.2d 30, (1990) STEVENS J concurring.)**

When the Supreme Court severed and excised parts of the Federal
Sentencing Act of 1994 akin to legislating (See, e.g., **Freeborn V.
Smith, 69 U.S. 160, 168, 17 L.Ed. 922, 175, 2 Wall 160 (1865),**
the Supreme Court in **Booker** modified the Federal Sentencing Guide-
lines nunc pro tunc to their November 1, 1987 date.
See, **Booker, BREYER,J., Slip Op, Pg 2.**

"We answer the question of remedy by finding the prov-
ision of the federal sentencing statute that makes the
Guidelines mandatory, 18 U.S.C.A. §3553(b)(1) (Supp. 2004)
incompatible with today's constitutional holding. We
conclude that this provision must be severed and excised,
which depends upon the Guidelines' mandatory nature.
So modified, the Federal Sentencing Act, See, Sentencing
Reform Act of 1984, as amended, 18 U.S.C. §3551 et seq.,
28 U.S.C. §991et seq., makes the Guidelines effectively advi-
sory."    **Booker, BREYER, J., Slip Op, pg. 2.**

Congress' power to make or amend remedial statutes retroactively
absent Ex Post Facto problems is unquestionable. See, **Freeborn
at 168,** ("We do not question the validity of retrospective statues
that are purely remedial.") See, **Frisbie V. Whitney, 76 U.S.
187, (1869).** Retroactivity thereby is simply a matter of intent.
See, **Rivers V. Road Way Express, 511 U.S. 298, 311, (1994).**
("The question is whether Congress has manifested such an intent.")
Because in **Booker,** it is the Supreme Court which remedially
modified the Sentencing Reform Act of 1984 as "Congress would
have intended." (BREYER, J., Slip Op. pg. 25.) had it known in
1984 its mandatory Sentencing guidelines violated the Sixth
Amendment (id pg. 22) ("We have examined the statute in depth
to determine Congress' likely intent in light of today's hold-
ing."), **Booker's** indisputable intent to modify the Guidelines
nunc pro tunc is dispositive.

Lastly, even if the Supreme Court did not assume Congress' role
in modifying the Sentencing Reform Act, in construing and inter-
preting it as "Congress would have intended", had it known its
mandatory Sentencing Guidelines violated the Sixth Amendment,
the Supreme Court has necessarily made **Booker** retroactive.

Like **Booker,** the Supreme Court in **Patterson V. McLean Credit Union
491 U.S. 164, 105 L.Ed.2d 132 (1989),** interpreted a 123-year old
statute differently than appellate courts had done since its

(7)

enactment. As to Patterson's retroactivity the court said:

> "A judicial construction of a statute is an authori-
> tative statement of what the statute meant before as
> well as after the decision of the case giving rise
> to that construction[.]  Thus Patterson provides the
> authoritative interpretation of the phrase 'make and
> enforce contracts' in the Civil Rights Act of 1866
> before the [Congressional] 1991 Amendment [overruling
> Patterson] went into effect on November 21, 1991.
> [Patterson's] interpretation provides the base line
> for our conclusion that the 1991 Amendment would be
> 'retrocative' if applied to cases arising before that
> date.

**Rivers V. Road Way Express at 313.**

Unlike **Rivers** which rejected retroactivity of the relevant Congr-
essional Amendment because it was not so intended by Congress, the
Supreme Court's judicial construction or interpretation of the
Sentencing Reform Act of 1984 is inescapable because  the Court has
no authority to depart from the Congressional command setting the
[November 1, 1987] effective date of the law it enacted.  **Rivers
at 313, n.12.**

The defendant has carefully considered why **Booker** is ending up help-
ing final cases, which Congress has so desperately tried to make
immunitable, more than others and has concluded that this result
was unintentional.  **Booker** discusses all of the defense windfalls
and complexities other Guideline holdings would have had and concl-
udes its Guideline amendments better express Congress' intent in
light of its Sixth Amendment holding. Final sentences will be limi-
ted by Double Jeopardy (see, e.g. **United States V. Velasco-Heredia,
319 F.3d 1080-1085 (9th Cir. 2003)** and Due Process (see, e.g.
**Webster V. Woodford, 361 F.3d 522, 526 (9th Cir. 2004)** strictly to
the maximum the jury finds beyond a reasonable doubt.  In truth,

(8)

that is no windfall to the victimized defendants.  It is simply an adjustment commensurate with proper proof.  Ironically, their benefit is but a consequence of an otherwise practical middle ground decision erroneously interpreted by many as pro-Government.

Simply put, Mr. Ashley received an illegal sentence, he was denied his constitutional right to a jury trial. The District Court erred by imposing a sentence that was greater than the maximum authorized by the facts admitted by the defendant. The enhancements that Ashley received were never admitted to by the defendant, rendering the 26 extra levels of enhancements illegal.

The Fourth and Sixth Circuits have already each applied plain-error review to **Booker** errors like the one in the instant case and remanded them for new sentencing hearings. See, **United States V. Hughes, 76 CrL 331 (4th Cir. 2005); United States V. Oliver, 76 CrL 349 (6th Cir. 2005).**  See, also, **United States V. Milan, 76 CrL 369 (6th Cir. 2005)** (elaborating on reasons for finding plain error).  With respect to the third prong of the plain-error test, the **Hughes** court held:

> the question for purposes of determining whether Hughes was prejudiced is not what the district court would have done had it imposed a sentence in the exercise of its discretion pursuant to § 3553(a).  Hughes does not argue that the district court erred by failing to regard the guidelines as advisory in sentencing him. Rather, Hughes argues that the district court erred by imposing a sentence that was greater than the maximum authorized by the facts found by the jury alone.  Therefore, the prejudice inquiry concerns what sentence the court would have imposed had it not committed the error of going beyond the facts found by the jury in imposing a sentence under the mandatory guideline regime then in existence.  This case does not present the question of whether a defendant suffers prejudice because a sentencing court fails to treat guide-

**(9)**

lines as advisory in determining the sentence.

Applying this understanding of the prejudice issue, the **Hughes** court concluded that the error that produced a sentence longer than the sentence authorized by the jury's findings affected the defendant's substantial rights.

The Sixth and Ninth Circuits followed a similar approach to the substantial rights issue.  In the **Ameline (9th Cir. No. 02-30326, 2/9/05, on rehearing in 376 F.3d 967, 75 CrL 487)** court, the Ninth Circuit held:

> Ameline was deprived of his right to have a jury find beyond a reasonable doubt the quantity of drugs attributable to him.  Here, ... as in **Booker**, the district court's sentence far exceeded the maximum sentence under the Guidelines that was supported by Ameline's admission that his offense involved only a "detectable quantity" of methamphetamine.  Without additional factual findings by the court, Ameline faced a maximum sentence of sixteen months.  Under these circumstances, we have no doubt that the constitutional error affected Ameline's substantial rights.

The Ninth Circuit's analysis of the discretionary prong of the plain error test also tracked the Fourth Circuit's reasoning in Hughes.  In **Hughes**, the Ninth Circuit held:

> [L]etting Ameline's sentence stand "simply because it may happen to fall within the range of reasonableness unquestionably impugns the fairness, integrity, or public reputation of judicial proceedings" ... "Moreover, declining to notice the error on the basis that the sentence actually be tantamount to performing the sentencing function ourselves."

**(10)**

As Mr. Ashley has clearly shown above, the District Court erred
when imposing a sentence that went beyond the maximum authorized
by law. It is a plain error, Mr. Ashley has always preserved
the issues, both in District Court and the Court of Appeals.

The United States Supreme Court has made it crystal clear that
a judge cannot enhance a sentence beyond the statutory maximum,
they have also made it very clear that the Guidelines have re-
placed the statutory maximum, and that enhancements are illegally
imposed when the facts are not admitted by the defendant or found
beyond a reasonable doubt to a jury. Anything less, is nothing
more than an illegal sentence.

For all of the reasons stated above, the defendant respectfully
requests that this Honorable Court order that the defendant be
re-sentenced to correct the illegal sentence that he received.


**RESPECTFULLY SUBMITTED**

*Sam Ashley Jr.*

Sam Ashley Jr. #40656-061
F.C.I.
P.O. Box 6001
Ashland Ky 41105-6001


**CERTIFICATION**

I do hereby certify that a copy of this motion has been sent
to the Asst. US Attorney, James Coomie at 221 East Fourth St.
Room 400, Cincinnati, Oh 45202, by Inmate Legal Mail at FCI
Ashland Ky on this 26th day of Feb 2005.

*Sam A. Ashley*